# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CAMPUS EYE MANAGEMENT HOLDINGS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2024-0121-LWW |
| E. BRUCE DIDONATO, OD, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| CAMPUS EYE MANAGEMENT, LLC, | ) ) | |
| Nominal Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: May 14, 2024
Date Decided: August 30, 2024

David J. Margules, Elizabeth A. Sloan & Steven L. Becton, II, BALLARD SPAHR LLP; Wilmington, Delaware; *Counsel for Plaintiff Campus Eye Management Holdings, LLC*

Mary F. Dugan, Emily V. Burton, Tanner C. Jameson & Alan C. Cardenas-Moreno, YOUNG CONAWAY STARGATT & TAYLOR LLP; Wilmington, Delaware; *Counsel for Defendant E. Bruce DiDonato, OD*

**WILL, Vice Chancellor**

This case concerns an optometrist who sold a majority interest in his New Jersey practice to a private equity firm. As part of the sale, the business was restructured into a parent company and a wholly owned subsidiary. Dr. E. Bruce DiDonato retained a 35% interest in the parent and one of three parent-level board seats. The private equity firm gained a 65% interest in the parent and appointed the other two board members.

DiDonato served as the subsidiary's initial manager. After closing, the private equity-affiliated members of the parent's board tried to amend the subsidiary's limited liability company agreement to remove him from that role. DiDonato sued in this court. He prevailed because he was never consulted about the amendment, despite a provision in the limited liability company agreement requiring his involvement.

The private equity-affiliated directors pivoted. They merged the subsidiary with a newly formed entity and, in doing so, amended the subsidiary's limited liability company agreement to make it member-managed rather than manager-managed. As such, DiDonato lost his manager position.

DiDonato insists that the directors were not entitled to remove him as a matter of contract, statute, and equity. But nothing in the relevant limited liability company agreements prevents the merger and associated amendment. The Delaware Limited Liability Company Act expressly permits them. DiDonato's equitable arguments

1

also fail since he was owed no duty to remain manager.  He must accept the bargain he struck in selling control of his business.

## I.    BACKGROUND

Unless otherwise noted, the following facts are based on the well-pleaded and undisputed facts in the pleadings.[1]

### A.    The Sale Transaction

E. Bruce DiDonato, OD is an optometrist.[2]  In the 1980s, he founded a New Jersey eye care practice.[3]  In 2021, he began to negotiate the sale of a majority stake in his business to The Beekman Group—a private equity firm.[4]

As part of the transaction, DiDonato formed a management services organization called Campus Eye Management, LLC (the "MSO") and its parent Campus Eye Management Holdings, LLC ("MSO Parent").[5]  He was named the "initial Manager" of the MSO in a Limited Liability Company Agreement (the "MSO LLC Agreement") dated December 14, 2021.[6]  On December 17, a

---

[1] Pl. Campus Eye Management Holdings, LLC's Verified Compl. for Declaratory J. (Dkt. 1) ("Compl."); Answer to Verified Compl. (Dkt. 22) ("Answer"); *see* Verified Countercl. (Dkt. 22) ("Countercl."); Pl.'s Reply to Def.'s Verified Countercl. (Dkt. 39); *see also Warner Commc'ns Inc. v. Chris-Craft Indus., Inc.*, 583 A.2d 962, 965 (Del. Ch. 1989), *aff'd*, 567 A.2d 419 (Del. 1989) (TABLE).

[2] Answer ¶ 8.

[3] *Id.*

[4] *Id.* ¶¶ 6, 10, 13.

[5] *Id.* ¶ 10.

[6] Compl. Ex. C (Original LLC Agreement) § 6; *see* Answer ¶ 11.

2

transaction closed in which approximately 65% of MSO Parent's equity was sold to The Beekman Group through Beekman-Campus Eye Holdings, LLC (together, the "Purchaser")—an entity formed to invest in the Campus Eye entities.[7] The Purchaser paid $15.3 million in exchange.[8] DiDonato retained about 35% of MSO Parent, which owns 100% of the MSO.[9] He remained the Manager of the MSO post-closing.[10]

### B. The MSO Parent LLC Agreement

As part of the sale, DiDonato and the Purchaser negotiated governance rights with respect to MSO Parent. Their agreement was reflected in a Limited Liability Company Agreement of MSO Parent (the "MSO Parent LLC Agreement").[11] The MSO Parent LLC Agreement entitles the Purchaser to appoint a majority of the managers on the MSO Parent Board of Managers.[12] The Purchaser appointed Andrew Marolda and Jonathan Keleman (together, the "Beekman Managers") to the

---

[7] Answer ¶¶ 7, 13.

[8] *Id.* ¶ 13.

[9] *Id.*

[10] *Id.* ¶ 14.

[11] *Id.* ¶ 16.

[12] *Id.*; Compl. Ex. B § 6.5. The MSO Parent LLC Agreement has been amended since the transaction. Compl. Ex. B.

3

MSO Parent Board.[13] DiDonato has minority representation and appointed himself as the third member of the MSO Parent Board.[14]

### C. The Prior Action

In June 2020, the Beekman Managers attempted to convert the MSO from a manager-managed entity to a member-managed entity.[15] They purported to amend the MSO LLC Agreement to remove DiDonato as Manager of the MSO.[16] DiDonato filed suit in this court, claiming that the Beekman Managers lacked the authority to amend the MSO LLC Agreement absent his involvement.[17]

The parties cross-moved for summary judgment. On January 31, 2024, a memorandum opinion was issued that granted summary judgment in favor of DiDonato (the "Prior Opinion").[18] The MSO Parent lacked the contractual right to amend the MSO LLC Agreement to amend it without DiDonato's involvement.[19]

---

[13] Answer ¶ 16.

[14] *Id.*

[15] *Id.* ¶ 22; *see DiDonato v. Campus Eye Mgmt., LLC*, 2024 WL 368112 (Del. Ch. Jan. 31, 2024).

[16] *DiDonato*, 2024 WL 368112, at *5-6.

[17] *Id.* at *3; Answer ¶ 23.

[18] *DiDonato*, 2024 WL 368112, at *11; Answer ¶ 24.

[19] *DiDonato,* 2024 WL 368112, at *7; Answer ¶ 24; Compl. Ex. C § 25 ("The Agreement may be amended, modified, waived or supplemented by the Manager with the written consent of all Members.").

4

As a result, the amendment was invalid and DiDonato remained the Manager of the MSO.[20]

### D. The Merger

The day the Prior Opinion was issued, the Beekman Managers—acting as a majority of MSO Parent Board's members—executed two written consents.[21] The first written consent formed Campus MSO Newco, LLC ("Newco"), a Delaware limited liability company wholly owned by MSO Parent.[22] The Beekman Managers further resolved that a Limited Liability Company Agreement of Campus MSO Newco, LLC (the "Newco LLC Agreement") be "approved and authorized in all respects."[23]

The second written consent purported to cause Newco to merge with and into the MSO (the "Merger").[24] In connection with the Merger, the Beekman Managers on behalf of MSO Parent as the "sole member" of the MSO also purported to amend and restate the MSO LLC Agreement (the "Amended MSO LLC Agreement").[25]

---

[20] *DiDonato*, 2024 WL 368112, at *11; Answer ¶ 24.

[21] Answer ¶ 25; Compl. Exs. F-G.

[22] Compl. Ex. F.

[23] *Id.* (attaching the Newco LLC Agreement as Exhibit B to the written consent).

[24] Compl. Ex. G.

[25] *Id.* (attaching an amended MSO LLC Agreement as Exhibit B to the written consent).

The Amended MSO LLC Agreement stated the MSO's "business and affairs" were "exclusively managed by or under the direction of [MSO Parent]."[26]

### E. This Litigation

On February 9, 2024, MSO Parent initiated this action by filing a verified complaint against DiDonato. It seeks a declaratory judgment that the Amended MSO LLC Agreement and merger of Newco and the MSO are valid.[27] It also seeks a declaratory judgment under 6 *Del. C.* § 18-110 that DiDonato is not the MSO's Manager.[28] In addition, MSO Parent brings claims for breach of fiduciary duty and reformation.[29]

On February 11, 2024, DiDonato filed a separate action against Beekman, the Beekman Managers, and the MSO.[30] He advances 12 claims, including for breach of fiduciary duty, breach of contract, and fraud.

On March 11, 2024, DiDonato answered the complaint, raising four affirmative defenses.[31] He also filed a counterclaim for a declaratory judgment

---

[26] Compl. Ex. A § 6; *see* Answer ¶ 26.

[27] Compl. ¶¶ 40-46 (Count I).

[28] *Id.* ¶¶ 47-52 (Count II).

[29] *Id.* ¶¶ 53-78 (Counts III, IV, and V). These counts are not relevant to this decision, which resolves only Counts I and II.

[30] *DiDonato v. Beekman Inv. P'rs IV*, C.A. No. 2024-0118-LWW (Del. Ch.).

[31] Answer ¶¶ 28-29.

under 8 *Del. C.* § 18-110.[32]  The MSO Parent replied to DiDonato's counterclaim on March 26.[33]

On April 5, MSO Parent moved for partial judgment on the pleadings regarding its declaratory judgment claims. [34]  On May 4, DiDonato filed an answering brief in opposition to the motion for partial judgment on the pleadings.[35] MSO Parent filed a reply in further support of its motion on May 10. [36]  Oral argument was held on May 14, and the motion was taken under advisement.[37]

## II.   ANALYSIS

A motion for judgment on the pleadings under Court of Chancery Rule 12(c) will be denied unless "no material issue of fact exists and the movant is entitled to judgment as a matter of law."[38]  "[T]he nonmoving party is entitled to the benefit of any inferences that may fairly be drawn from the nonmoving party's pleading."[39]

---

[32] Countercl. ¶¶ 100-17.

[33] Dkt. 39.

[34] Pl.'s Opening Br. in Supp. of Pl.'s Mot. for Partial J. on the Pleadings (Dkt. 41) ("Pl.'s Opening Br.").

[35] Answering Br. in Opp'n to Pl.'s Mot. for Partial J. on the Pleadings (Dkt. 45) ("Def.'s Answering Br.").

[36] Reply Br. in Supp. of Pl.'s Mot. for Partial J. on the Pleadings (Dkt. 51).

[37] *See* Oral Arg. Tr. (Dkt. 56).

[38] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993); *see* Ct. Ch. R. 12(c).

[39] *Warner Commc'ns Inc. v. Chris-Craft Indus., Inc.*, 583 A.2d 962, 965 (Del. Ch. 1989).

"The proper interpretation of an unambiguous contract or statute is a question of law that is appropriately resolved on a motion for judgment on the pleadings."[40]

When interpreting limited liability company agreements, "Delaware [courts] adhere to the 'objective' theory of contracts, i.e., a contract's construction should be that which would be understood by an objective, reasonable third party."[41] Likewise, "[t]he basic rule of statutory construction . . . requires a court to ascertain and give effect to the intent of the legislature."[42] "If the statute as a whole is unambiguous and there is no reasonable doubt as to the meaning of the words used, the court's role is limited to an application of the literal meaning of those words."[43]

## A. The Declaratory Judgment Claims

MSO Parent avers that it is entitled to partial judgment on the pleadings because it complied with the MSO Parent LLC Agreement, the Original MSO LLC Agreement, and the default rules of the Delaware Limited Liability Company Act (the "LLC Act"). "If [an LLC] agreement lacks an applicable provision, and does

---

[40] *Strougo v. Hollander*, 111 A.3d 590, 594-95 (Del. Ch. 2015) (citing *Jana Master Fund, Ltd. v. CNET Networks, Inc.*, 954 A.2d 335, 338 (Del. Ch. 2008)).

[41] *Zohar III Ltd. v. Stila Styles, LLC*, 2022 WL 1744003, at *8 (Del. Ch. May 31, 2022) (alteration in original; citation omitted).

[42] *In re Adoption of Swanson*, 623 A.2d 1095, 1096 (Del. 1993).

[43] *Id.* at 1096-97.

not foreclose the application of [a] default rule, then the statutory provision fills the void and resolves the matter."[44]

The MSO Parent LLC Agreement permits the MSO Parent Board to act by majority written consent. The LLC Act permits the majority members of a limited liability company to approve a merger and to adopt a new or amended limited liability company agreement in connection with a merger. Nothing in the Original MSO LLC Agreement (or the Newco LLC Agreement) provides otherwise. As a result, MSO Parent maintains that DiDonato was validly removed through the Amended MSO LLC Agreement.

### 1. Actions by Majority Written Consent

Under Section 18-404(d) of the LLC Act, "[u]nless otherwise provided in a limited liability company agreement," written consent by managers may be done by majority, "without a meeting," and "without prior notice."[45]

Section 6.4 of the MSO Parent LLC Agreement authorizes the MSO Parent Board to act by majority written consent.[46] It states, in relevant part:

> Action by Written Consent or Telephone Conference. Any action or resolution permitted or required by the Act, the Certificate or this Agreement to be taken at a meeting of the Board or any committee designated by the Board may be taken without a

---

[44] Robert L. Symonds, Jr. & Matthew J. O'Toole, *Symonds & O'Toole on Delaware Limited Liability Companies* § 1.03[A][2] 1-15 (2d ed. 2019).

[45] 6 *Del. C.* § 18-404(d).

[46] *See* Answer ¶ 27.

meeting if a consent in writing, setting forth the action to be taken, is signed by a majority of the Managers or members of such committee (including at least one Beekman Manager), as the case may be. Such consent shall have the same force and effect as a majority vote at a meeting and may be stated as such in any document or instrument filed with the Secretary of State of Delaware, and the execution of such consent shall constitute attendance or presence in person at a meeting of the Board or any such committee, as the case may be.[47]

The MSO Parent LLC Agreement lacks any provision requiring advance notice of written consents approved under Section 6.4.[48]

The two Beekman Managers comprise a majority of the three-member MSO Parent Board.[49] In that capacity, they executed two written consents on January 31, 2024.[50] Consistent with Section 6.4 of the MSO Parent LLC Agreement, the consents were "in writing," "set[ ] forth the action[s] to be taken," and were "signed by a majority of the Managers" of the MSO Parent Board.[51] The MSO LLC Agreement provides that the written consents "shall have the same force and effect as a majority vote at a meeting."[52]

---

[47] Compl. Ex. B § 6.4 (emphasis removed).

[48] *See* Compl. Ex. B.

[49] Compl. ¶ 25; Answer ¶ 25.

[50] Answer ¶ 25; Compl. Exs. F-G.

[51] Compl. Ex. B § 6.4; *see* Compl. Exs. F-G.

[52] Compl. Ex. B § 6.4.

DiDonato avers in his counterclaim that the "Beekman Managers did not discuss the [p]urported Merger with him" or "provide him with notice that the MSO Parent Board was considering the [] Merger."[53] There is, however, no default requirement of notice in the LLC Act.[54] As noted above, Section 6.4 of the MSO Parent LLC Agreement lacks a notice provision.[55] The Beekman Managers were therefore authorized to act by written consent without providing notice to DiDonato.[56]

### 2. The Merger

Under Section 18-209(b) of the LLC Act, a majority of an entity's members can approve a merger unless "otherwise provided" in a limited liability company agreement. Section 18-209(b) states:

> Unless otherwise provided in the limited liability company agreement, an agreement of merger or consolidation or a plan of merger shall be approved by each domestic limited liability company which is to merge or consolidate by members who own more than 50 percent of the then current percentage or other interest in the profits of the

---

[53] Countercl. ¶ 5.

[54] 6 *Del. C.* § 18-404(d).

[55] *See supra* note 48 and accompanying text.

[56] *See Paul v. Delaware Coastal Anesthesia, LLC*, 2012 WL 1934469, at *3 (Del. Ch. May. 29, 2012) (rejecting an argument that a member was entitled to notice of her termination where the operating agreement did not preempt actions by written consent to terminate a member and Section 18-302 of the LLC Act did not require prior notice).

11

domestic limited liability company owned by all of the members.[57]

The Original MSO LLC Agreement, which was operative at the time of the Merger, is silent on whether a merger can be brought about by a majority of the members.[58] So is the Newco LLC Agreement.[59] The LLC Act fills the gap with a default rule.[60]

Section 18-209(b) expressly authorizes "members who own more than 50 percent" of the membership interests to approve a merger.[61] MSO Parent is the only member of the MSO and was the only member of Newco.[62] It had statutory authority to approve the Merger.

### 3. The Amended MSO LLC Agreement

The Amended MSO LLC Agreement was adopted when the MSO and Newco merged in accordance with Section 18-209(b) of the LLC Act. The Amended MSO

---

[57] 6 *Del. C.* § 18-209(b).

[58] Compl. Ex. C.

[59] Compl. Ex. F at Ex. B.

[60] *See Achaian, Inc. v. Leemon Family LLC*, 25 A.3d 800, 802 (Del. Ch. 2011) (recognizing that the LLC Act is "an enabling statute whose primary function is to fill gaps, if any, in a limited liability company agreement").

[61] 6 *Del. C.* § 18-209(b); *see also Kelly v. Blum*, 2010 WL 629850, at *7 (Del. Ch. Feb. 24, 2010) ("Generally, in Delaware, a merger of an LLC must be approved 'by members who own more than 50 percent of the then current percentage or other interests in the profits' of that company.").

[62] Answer ¶ 1; Compl. Ex. F at Ex. B.

LLC Agreement restructured the MSO from a manager-managed entity to a member-managed entity, removing the "Manager" position altogether.[63]

Section 18-209(f) of the LLC Act permits members of a limited liability company to amend the entity's limited liability company agreement in connection with a merger, notwithstanding any amendment provision in the agreement, unless the provision expressly applies to an amendment in connection with a merger.[64] Section 18-209(f) states:

> An agreement of merger or consolidation or a plan of merger approved in accordance with subsection (b) of this section may: (1) Effect any amendment to the limited liability company agreement; or (2) Effect the adoption of a new limited liability company agreement, in either case, for a limited liability company if it is the surviving or resulting limited liability company in the merger or consolidation. Any amendment to a limited liability company agreement or adoption of a new limited liability company agreement made pursuant to the foregoing sentence shall be effective at the effective time or date of the merger or consolidation and *shall be effective*

---

[63] *Compare* Compl. Ex. A § 6 *with* Compl. Ex. C § 6; Answer ¶ 26; *see* Symonds, Jr. & O'Toole, *supra* note 44, at § 9.05[C] 9-55 to -56 ("[I]t would appear that removal of a manager or an equivalent result may be achieved in the absence of a removal provision in the limited liability company agreement, for example, by an amendment of the agreement directed at that purpose.").

[64] 6 *Del. C.* § 18-209(f); *cf. Benchmark Cap. P'rs IV v. Vague*, 2022 WL 1732423, at *9 (Del. Ch. July 15, 2002) (concluding that drafters of corporate instruments "are charged with knowledge of its holding," including that "[t]he path for future drafters to follow . . . [is to] add[] the terms 'whether by merger, consolidation or otherwise'" if they want a particular restriction to apply to mergers), *aff'd sub nom.*, *Benchmark Cap. P'rs IV, L.P. v. Juniper Fin. Corp.*, 822 A.2d 396 (Del. 2003) (TABLE).

> *notwithstanding any provision of the limited liability company agreement relating to amendment* or adoption of a new limited liability company agreement, *other than a provision that by its terms applies to an amendment* to the limited liability company agreement or the adoption of a new limited liability company agreement, in either case, *in connection with a merger or consolidation.*[65]

There is no provision in the Original MSO LLC Agreement addressing amendments in connection with a merger.[66] The Amended MSO LLC Agreement is valid under Section 18-209(f).

### B. DiDonato's Arguments, Affirmative Defenses, and Counterclaim

DiDonato makes a series of arguments against a partial judgment on the pleadings. He maintains that the Merger and associated amendment violate the relevant limited liability company agreements, the implied covenant of good faith and fair dealing, and fiduciary duty law. None of his arguments in opposing the motion, his affirmative defenses, or his counterclaim put in doubt that MSO Parent is entitled to judgment in its favor on Counts I and II of the complaint. The Merger is not invalid based on contract, quasi-contract, or equity.

#### 1. Compliance with the LLC Agreements

DiDonato asserts that the Merger and the Amended MSO LLC Agreement are invalid under both the Original MSO LLC Agreement and the MSO Parent LLC

---

[65] 6 *Del. C.* § 18-209(f) (emphasis added).

[66] *See* Compl. Ex. C.

Agreement, citing an array of reasons. All fail in view of the text of the operative contracts and the default rules of the LLC Act.

First, DiDonato suggests that the Amended MSO LLC Agreement is ineffective because he was not given advance notice of the amendment (or Merger) pursuant to the Original MSO LLC Agreement.[67] The LLC Act states that "[u]nless otherwise provided in a limited liability company agreement . . . members may take such action without a meeting, without prior notice and without a vote if consented to, in writing . . . ."[68] There is no such notice provision in the Original MSO LLC Agreement.

Second, DiDonato avers that the court should read Section 18-209(f) as requiring "an actual transaction of some kind" rather than one with the "sole purpose" of effecting "an otherwise impossible amendment."[69] He states that this reading is necessary to harmonize Section 18-209(f) with Section 18-302(e) of the LLC Act, which requires that an amendment be approved by the parties identified in

---

[67] Countercl. ¶¶ 5-9.

[68] 6 *Del. C.* § 18-302(d).

[69] Countercl. ¶ 10. DiDonato did not raise this argument in his answering brief. I address it for the sake of completeness to the extent it has not been waived by omission. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

an LLC agreement.[70] That construction is inconsistent with the plain text of the LLC Act.

Section 18-302(e) expressly incorporates Section 18-209(f):

> If a limited liability company agreement provides for the manner in which it may be amended, including by requiring the approval of a person who is not a party to the limited liability company agreement or the satisfaction of conditions, it may be amended only in that manner or as otherwise permitted by law, *including as permitted by § 18-209(f) of this title* (provided that the approval of any person may be waived by such person and that any such conditions may be waived by all persons for whose benefit such conditions were intended).[71]

Neither Section 18-209(f) nor Section 18-302(e) includes any required purpose to effect a merger.[72] DiDonato's reading of the statute would render Section 18-302(e)'s incorporation of Section 18-209(f) meaningless.[73] It is also inconsistent with the doctrine of independent legal significance, which is codified in the LLC Act.[74]

---

[70] Countercl. ¶ 10; 6 *Del. C.* § 302(e) ("If a limited liability company agreement provides for the manner in which it may be amended, . . . it may be amended only in that manner or as otherwise permitted by law . . . .").

[71] 6 *Del. C.* § 18-302(e) (emphasis added).

[72] *Cf. Weinberger v. UOP, Inc.*, 457 A.2d 701, 704 (Del. 1983) ("[T]he business purpose requirement . . . is no longer the law of Delaware."); *Elliott Assocs.*, 715 A.2d at 850 (explaining that *Weinberger* "abolish[ed] [the] business-purpose requirement theretofore applied to parent-subsidiary mergers").

[73] *See Swanson*, 623 A.2d at 1099 ("A statute cannot be construed to produce an absurd, meaningless or patently inane result.").

[74] *See* 6 *Del. C.* § 1101(h).

Third, DiDonato argues that Section 25 of the Original MSO LLC Agreement bars MSO Parent from making a unilateral amendment.[75]  In the Prior Opinion, this court held that Section 25 of the Original MSO LLC Agreement "expressly requires the Manager to be involved if the MSO LLC Agreement were to be amended."[76]  DiDonato insists that this court's ruling in the Prior Opinion is preclusive and requires that DiDonato be involved in any amendment to the Original MSO LLC Agreement.[77]  But that decision involved an attempted amendment by the Beekman Managers under Section 25 without DiDonato's involvement.[78]  The Amended MSO LLC Agreement came about in a different manner entirely: the Merger.[79]

The Prior Opinion did not hold that Section 25 barred otherwise lawful and valid ways to carry out an amendment.[80]  Nor could it.  The default rule of Section 18-209(f) applies absent an express provision addressing amendments done "in connection with a merger."[81]  Section 25 of the Original MSO LLC Agreement does not address such amendments.

---

[75] Def.'s Answering Br. 22-24.

[76] *See DiDonato*, 2024 WL 368112, at *4.

[77] Def.'s Answering Br. 22-23.

[78] *DiDonato*, 2024 WL 368112, at *4-5.

[79] Answer ¶¶ 25-26.

[80] *See DiDonato v. Campus Eye Mgmt., LLC*, C.A. No. 2023-0671-LWW (Del. Ch. Feb. 12, 2024) (TRANSCRIPT).

[81] 6 *Del. C.* § 18-209(f); *see supra* note 64-65 and accompanying text (quoting the statute).

This does not render Section 25 of the Original MSO LLC Agreement illusory or absurd, as DiDonato avers.[82]  If MSO Parent wanted to simply amend the Original MSO LLC Agreement, they were required to coordinate with DiDonato in accordance with Section 25.  They chose, instead, to undertake the Merger under Section 18-209(b) and amend the Original MSO LLC Agreement as permitted by Section 18-209(f).[83]

Fourth, DiDonato contends that Section 25 of the Original MSO LLC Agreement must trump the provisions of the MSO Parent LLC Agreement that "simply address the general authority of the MSO Parent Board to act."[84]  This contention draws on the canon of contract construction by which specific language controls over general language.[85]  But the Original MSO LLC Agreement and the Parent MSO LLC Agreement are two separate contracts governing two separate

---

[82] Def.'s Answering Br. 26.  DiDonato cites to *Coughlan v. NXP B.V.* to argue that Section 25 of the Original MSO LLC Agreement is "purely illusory" if the Merger were valid. 2011 WL 5299491, at *12 (Del. Ch. Nov. 4, 2011).  *Coughlan* is concerned with analyzing earnout provisions through the step-transaction doctrine, which only applies to "separate but related transactions involving the transfer of property."  *Coughlan*, 2011 WL 5299491, *20.  The amendment here did not involve the transfer of property.

[83] *See supra* notes 57-66 and accompanying text.

[84] Def.'s Answering Br. 29.

[85] *See DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) ("Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one.").

entities. Neither allows (let alone requires) one to "give way" to the other.[86]

DiDonato cites no authority where a provision in one entity's governing agreement is overridden by an unrelated provision in another entity's governing agreement. To conflate these agreements would be inconsistent with principles of corporate separateness.[87]

Fifth, DiDonato contends that the Beekman Managers' approval of the Merger was inconsistent with the MSO Parent LLC Agreement.[88] Section 6.1 of the MSO Parent LLC Agreement provides that MSO Parent is to be managed by the Board.[89] And Section 6.5 confirms that DiDonato has a seat on the MSO Parent Board.[90] He therefore maintains that the ability to act by written consent under Section 6.4 must be read to include a requirement that he receive notice of Board level topics.

As discussed above, however, there is no such requirement in the MSO Parent LLC Agreement. The plain text of Section 6.4 permits action by majority written consent. Section 18-404(d) permits managers to act by majority written consent

---

[86] Def.'s Answering Br. 29.

[87] *See, e.g., Sixth Street P'rs Mgmt. Co. v. Dyal Cap. P'rs III (A) LP*, 2021 WL 1553944, at *8 (Del. Ch. Apr. 20, 2021) (stating that to view one entity's actions as the actions of another in the same corporate family "runs afoul of Delaware's well-settled respect for and adherence to principles of corporate separateness and freedom of contract"), *aff'd*, 253 A.3d 92 (Del. 2021) (TABLE).

[88] Def.'s Answering Br. 41-42.

[89] Compl. Ex. B § 6.1.

[90] *Id.* § 6.5.

"without a meeting" and "without prior notice," "[u]nless otherwise provided in a limited liability company agreement."[91] There is no notice provision in the MSO Parent LLC Agreement.

2. The Implied Covenant

DiDonato next argues that if Section 25 of the Original MSO LLC Agreement does not "bar" the Merger, the implied covenant of good faith and fair dealing "block[s]" it absent his consent.[92] "The application of the implied covenant of good faith and fair dealing [ ] is limited to filling contractual gaps that neither party anticipated."[93] The doctrine "ensures parties do not 'frustrat[e] the fruits of the bargain' by acting 'arbitrarily or unreasonably.'"[94] It can fill a gap only if "it is clear from the contract that the parties would have agreed to that term had they thought to negotiate the matter."[95] The implied covenant attaches to limited liability company agreements.[96]

---

[91] 6 *Del. C.* § 18-404(d); *see supra* 45-48 and accompanying text.

[92] Def.'s Answering Br. 32. This analysis assumes, without deciding and for the sake of argument, that DiDonato has standing to assert an implied covenant claim regarding the Original MSO LLC Agreement.

[93] *Ryan v. Buckeye P'rs, L.P.*, 2022 WL 389827, at *7 (Del. Ch. Feb. 9, 2022), *aff'd*, 285 A.3d 459 (Del. 2022).

[94] *Id.* (citing *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017)).

[95] *Fisk Ventures, LLC v. Segal*, 2008 WL 1961156, at *10 (Del. Ch. May 7, 2008) (citation omitted); *see also Allen v. El Paso Pipeline GP Co.*, 113 A.3d 167, 183 (Del. Ch. 2014) (explaining that the court must first "determine whether a gap exists").

[96] *See Holifield v. XRI Inv. Holdings LLC*, 304 A.3d 896, 924 n.125 (Del. 2023).

DiDonato asserts that, when the parties signed the Original MSO LLC Agreement, it was unforeseeable that MSO Parent might use a merger to effect an amendment.[97] But Section 18-209(f) of the LLC Act contemplates this very situation. It sanctions an amendment or adoption of a new LLC agreement "notwithstanding any provision of the limited liability company agreement relating to amendment or adoption of a new limited liability company agreement."[98] And DiDonato cites no law permitting this court to imply a contractual provision to overcome the default terms of the LLC Act.[99]

DiDonato's belief that an implied term should be read into Section 6.5 of the MSO Parent LLC Agreement, giving him a right to notice and active participation in Board-level decisions, fails for similar reasons. Section 6.4 of the MSO Parent LLC Agreement permits the MSO Parent Board to act by majority written consent.[100] Section 18-404(d) of the LLC Act does not mandate notice unless required by the limited liability company agreement.[101] And Section 6.5 of the MSO Parent LLC Agreement only provides DiDonato with a minority Board vote. The MSO Parent

---

[97] Def.'s Answering Br. 37.

[98] 6 *Del. C.* § 18-404(f).

[99] *Delaware Coastal Anesthesia, LLC*, 2012 WL 1934469, at *2 ("The Act . . . exists as a 'gap filler,' supplying terms not fully explicated in an LLC agreement.").

[100] Compl. Ex. B § 6.4.

[101] 6 *Del. C.* § 18-404(d).

21

LLC Agreement further provides that "the act of a majority of all Managers (including at least one Beekman Manager) shall be the act of the Managers."[102]

Moreover, the Merger does not "frustrate the 'overarching purpose'" of the parties' bargain, as DiDonato claims.[103] DiDonato sold a 65% interest in his business to Beekman for $14 million.[104] He did not bargain for the right to unilaterally stop a merger. He did not bargain for the right to manage the MSO in perpetuity. He bargained for and obtained minority governance rights in MSO Parent as one of three Board members, to serve as the MSO's "initial Manager," and that the Beekman Managers could act by written consent as a majority of the MSO Parent Board.[105] Delaware courts will not imply rights in these circumstances.[106]

### 3. The Affirmative Defenses

DiDonato raises four affirmative defenses in his answer to the complaint. The first two are that MSO Parent has not stated a claim and that MSO Parent's claims

---

[102] Compl. Ex. B § 6.3.

[103] *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) ("[P]arties are liable for breaching the covenant [of good faith and fair dealing] when their conduct frustrates the 'overarching purpose' of the contract by taking advantage of their position to control implementation of the agreement's terms.").

[104] Answer ¶ 13.

[105] *See* Compl. Ex. C § 6; Compl. Ex. B § 6.4.

[106] *E.g.*, *Murfey v. WHC Venture, LLC*, 236 A.3d 337, 350 (Del. 2020) ("Implying terms that the parties did not expressly include risks upsetting the economic balance of rights and obligations that the contracting parties bargained for in their agreement.").

22

are barred under a preclusion doctrine. These defenses fail for the reasons explained above.[107]

DiDonato also advances two equitable affirmative defenses: one for laches and waiver, and one for unclean hands. These defenses are brought in response to legal claims.[108] To the extent are available here, no facts are alleged to support them. An affirmative defense "must be supported by pled facts."[109] "The rhythmic incantation of multiple affirmative defenses . . . cannot, alone, defeat an otherwise well-supported motion for judgment on the pleadings."[110]

### a. Laches and Waiver

"Laches is an affirmative defense that the plaintiff unreasonably delayed in bringing suit after learning of an infringement of his or her rights."[111] It has two elements: "(i) unreasonable delay in bringing a claim by a plaintiff with knowledge

---

[107] They were also rejected in the Prior Opinion. *See DiDonato*, 2024 WL 368112, *8-9 .

[108] Compl. ¶¶ 45, 51; *see Lehman Bros. Hldgs. v. Spanish Broad. Sys., Inc.*, 2014 WL 718430, at *7 n.47 (Del. Ch. Feb. 25, 2014) ("[T]he 'unclean hands' doctrine bars equitable, but not legal, relief."); *see Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 493 (Del. Ch. 2022) ("[A] defense of unclean hands is generally unavailable to defeat a legal claim . . . ."); *Quantlab Grp. GP, LLC v. Eames*, 2019 WL 1285037, at *7 (Del. Ch. Mar. 19, 2019) (rejecting an unclean hands defense because "[p]laintiffs' claims do not invoke equity"), *aff'd*, 222 A.3d 580 (Del. 2019).

[109] *Leaf Invenergy Co. v. Invenergy Wind LLC*, 2016 WL 3566365, at *3 (Del. Ch. June 30, 2016) (citing *Cypress Assocs., LLC. v. Sunnyside Cogeneration Assocs. Project,* 2007 WL 148754, at *18 (Del. Ch. Jan. 17, 2007)).

[110] *GreenStar IH Rep, LLC v. Tutor Perini Corp.*, 2017 WL 5035567, at *8 (Del. Ch. Oct. 31, 2017), *aff'd*, 186 A.3d 799 (Del. 2018).

[111] *Levey v. Brownstone Asset Mgmt., L.P.*, 76 A.3d 764, 769 (Del. 2013).

thereof, and (ii) resulting prejudice to the defendant."[112] To establish waiver, a party must show the "voluntar[y] and intentional[] relinquish[ment] of a known right."[113]

Despite MSO Parent addressing the merits in its opening brief, DiDonato's answering brief makes no substantive argument to support this affirmative defense.[114] That is unsurprising. This court rejected a similar laches argument in DiDonato's earlier action.[115]

In more recent events, MSO Parent approved the Merger the same day (January 31, 2024) that the court issued the Prior Opinion. MSO Parent filed this lawsuit seven business days later. This is not undue delay, and MSO Parent's defense of the prior action did not waive its ability to pursue the Merger.

---

[112] *Id.*

[113] *Medek v. Medek*, 2008 WL 4261017, at *10 (Del. Ch. Sept. 10, 2008).

[114] DiDonato cites only to the "117 paragraphs of facts pled in the Counterclaims and the various denials and clarifications offered in the Answer" in support of his affirmative defenses. Def.'s Answering Br. 61. He makes no effort to explain which specific assertions support them or to address the merits. *See Bocock v. Innovate Corp.*, 2022 WL 15800273, at *21 (Del. Ch. Oct. 28, 2022) ("A party's failure to raise an argument in its answering brief constitutes a waiver of that argument."); *In re Mobileactive Media, LLC*, 2013 WL 297950, at *12 n.152 (Del. Ch. Jan. 25, 2013) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . ." (citation omitted)); *see also Emerald P'rs*, 726 A.2d at 1224. The words "laches" and "waiver" are absent from DiDonato's brief.

[115] *DiDonato*, 2024 WL 368112, *8.

### b. Unclean Hands

"The question raised by a plea of unclean hands is whether the plaintiff's conduct is so offensive to the integrity of the court that his claims should be denied, regardless of their merit."[116] Again, DiDonato's brief is silent on the merits of this affirmative defense.[117] It appears to be based on the purported breaches of fiduciary duty raised in his counterclaim.[118] In any event, it lacks support. There is no well-pleaded basis in the answer or counterclaims to conclude that MSO Parent engaged in conduct offensive to the integrity of the court, much less conduct related to the validity of the corporate acts at issue. "Naked legal conclusions" stated as affirmative defenses will not defeat a motion for judgment on the pleadings.[119]

### 4. The Counterclaim

Finally, DiDonato asserts a counterclaim for a declaratory judgment under Section 18-110.[120] He seeks declarations that the Amended MSO LLC Agreement is "not valid as a matter of Delaware law" and that the Merger is "ineffective because

---

[116] *Gallagher v. Holcomb & Salter*, 1991 WL 158969, at *4 (Del. Ch. Aug. 16, 1991), *aff'd sub nom. New Castle Ins., Ltd. v. Gallagher*, 692 A.2d 414 (Del. 1997).

[117] *See supra* note 114 and accompanying text (discussing DiDonato's waiver of his arguments in support of his affirmative defenses). The phrase "unclean hands" is absent from DiDonato's answering brief.

[118] *See infra* Section II.B.4.

[119] *Leaf Invenergy Co.*, 2016 WL 3566365, at *3.

[120] Countercl. ¶¶ 100-17.

25

it violates the MSO Parent LLC[] [Agreement]" and the Original MSO LLC Agreement.[121] This is the inverse of the relief sought by MSO Parent in Counts I and II of its Complaint. As such, the counterclaim fails for the same reasons that MSO Parent's claims succeed.[122]

DiDonato raises one additional argument not resolved above: that the Merger is "invalid as a breach of fiduciary duties."[123] DiDonato argues that the Merger must fail under the "twice tested" framework of the *Schnell* doctrine.[124] This contention provides no grounds to deny MSO Parent's motion for judgment on the pleadings on Count I and II. [125]

The Merger did not implicate any fiduciary relationship between Beekman and the Beekman Managers, on one hand, and DiDonato, on the other hand.

---

[121] *Id.* ¶¶ 114-16.

[122] *See In re RJR Nabisco, Inc., S'holders Litig.*, 1990 WL 80466, at *1 (Del. Ch. June 12, 1990) (explaining that counterclaims that are "simply a restatement or specification of the answer denying liability" must be dismissed as contrary to "the purposes of the [Delaware] Declaratory Judgment Act"); *see also Quantlab*, 2019 WL 1285037, at *4 (holding that counterclaims that "mirror" claims in the complaint must be "summarily dismissed" because an "adjudication of the claims raised" in the complaint will "render [the] [c]ounterclaims moot").

[123] Countercl. ¶ 117. There is no viable argument that the MSO Parent Board lacked the authority to execute the Merger.

[124] Def.'s Answering Br. 49; *see Schnell v. Christ-Craft Indust., Inc.*, 285 A.2d 437 (Del. 1971); *see also Sample v. Morgan*, 914 A.2d 647, 672 (Del. Ch. 2007) (noting that a "contract may be unenforceable on equitable grounds" if it is "premised upon a breach of fiduciary duty").

[125] DiDonato raises a series of grievances about the Beekman Managers, including accusing them of breaches of fiduciary duty. Countercl. ¶¶ 82-83, 87-88. They are

26

DiDonato alleges that Beekman Managers owe fiduciary duties to MSO Parent and "contractual" duties to its members, that Beekman owes fiduciary duties as MSO Parent's controlling member, and that these duties were breached because the "sole purpose" of the Merger is to "deprive [him] of all meaningful governance rights."[126] But DiDonato has no legal interest in the MSO either as a member of MSO Parent or as a member of the MSO Parent Board. The MSO's sole member is MSO Parent, and MSO Parent owes no fiduciary duties to the MSO.[127]

At the MSO Parent level, the Merger did not alter any governance or other rights. DiDonato retains his seat on the MSO Parent Board with the Beekman Managers holding the other two seats. Beekman did not obtain any member-level rights and minority members (like DiDonato) were not "deprived" of anything. The

untethered to his Section 18-110 counterclaim. *See Avgiris Brothers, LLC v. Bouikidis*, 2022 WL 4672075, at *13 (Del. Ch. Sept. 30, 2022) (finding "a list of grievances" to be "collateral" to the defendants' defenses in a Section 18-110 case). His fiduciary duty allegations are before this court in a separate matter. *See supra* note 30 and accompanying text.

[126] Countercl. ¶¶ 14, 16, 57, 61, 91, 99.

[127] *See Anadarko Petrol. Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988) ("[A] parent does not owe a fiduciary duty to its wholly owned subsidiary."). DiDonato also acknowledges in his counterclaim (¶ 61) that the MSO Parent LLC Agreement waives the MSO Parent Board Members' fiduciary duties to the members of MSO Parent. Compl. Ex. B § 8.1 ("Notwithstanding this Section 8.1, a Manager shall not owe fiduciary duties to any Member to the fullest extent permitted by the Act.").

only result of the Merger is that MSO Parent obtained control of its sole asset—the MSO.[128]

DiDonato's main complaint is that he is no longer the MSO's Manager. His interest is personal and contractual.[129] DiDonato was owed no fiduciary duty to remain Manager. He was owed no fiduciary duty at the MSO level, much less a duty to perpetuate him as the MSO's Manager.[130] Given the absence of any fiduciary duty owed to DiDonato in this regard, his argument that entire fairness applies is irrelevant.

## III. CONCLUSION

MSO Parent has demonstrated that it is entitled to judgment in its favor on Counts I and II. The Amended MSO LLC Agreement is valid and enforceable. The Merger is effective. Because the MSO is now a member-managed entity, DiDonato

---

[128] *See Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 191 (Del. Ch. 2006) ("Wholly-owned subsidiary corporations are expected to operate for the benefit of their parent corporations; that is why they are created."), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007) (TABLE).

[129] *Cf. Dawson v. Pittco Cap. P'rs, L.P.*, 2012 WL 1564805, at *34 (Del. Ch. Apr. 30, 2012) (dismissing fiduciary duty claims by "preferred members" because the defendant did not owe fiduciary duties to "preferred members" in that capacity); *U-H Acq. Co. v. Barbo*, 1994 WL 34688, at *5 (Del. Ch. Jan. 31, 1994) (concluding that an "arms-length tender offeror" was owed no fiduciary duty by the general partners and "lack[ed] standing to bring a claim for breach of a fiduciary duty by the general partners").

[130] *In re Nine Sys. S'holders Litig.*, 2013 WL 771897, at *7 (Del. Ch. Feb. 28, 2013) ("A claim for breach of fiduciary duty 'must be based on an actual, existing fiduciary relationship between the plaintiff and the defendants at the time of the alleged breach.'").

is no longer the Manager of the MSO. None of DiDonato's arguments preclude judgment as a matter of law on Counts I and II.

The parties are asked to confer on a schedule to resolve the remaining claims in this matter. A proposed schedule is due within ten business days of this decision.